THE STATE OF CONNECTICUT EX REL KATHERINE
SZECSKAS *vs.* ST. LASZLO HUNGARIAN ROMAN &
GREEK CATHOLIC SICK BENEFIT SOCIETY OF
BRIDGEPORT, INC.

Third Judicial District, New Haven, June Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued June 5th—decided July 9th, 1930.

*Clifford B. Wilson,* for the appellant (relator).

*Jacob B. Klein,* for the appellee (respondent).

MALTBIE, J. The relator was a member of the respondent Society in good standing. In 1924 she returned to Hungary and since has resided there. The by-laws of the Society provide for the payment of monthly dues. The son of the relator paid her dues at the regular monthly meeting of the Society in February, 1927, in accordance with its custom to receive them at these meetings. Her dues were not paid at the monthly meeting in March. The next monthly meeting would have fallen on Easter Sunday and it was voted to postpone it for a week and notice of this change was given in various ways. The relator's son, however, went to the place of meeting on Easter Sunday to pay the dues but found no one there to receive them. He appeared at the regular meeting in May and offered to pay all dues in arrears but the respondent refused to receive them. The secretary reported to this meeting that the relator had been suspended for nonpayment of dues and, the court finds, this action was duly approved by the members of the Society. On June 3d, 1927, the advisory board, whose duty it is under the by-laws to supervise the affairs of the Society, also approved the relator's suspension. This action is brought to compel her reinstatement as a member of the Society and the decisive question is, was she suspended in accordance with its by-laws?

The relator seeks several changes in the finding. In so far as these ask the addition of formal matters, as provisions of the by-laws, or portions of the records of the Society, we treat them as a part of the finding. In so far as they involve the legal effect or construction of the by-laws or records, we deal with them sufficiently hereafter. The only other change sought is not material to the disposition of the case in the view we take of it.

In January, 1921, the Society adopted new by-laws

for governing its affairs. They conclude with this statement: "These by-laws shall according to the resolution of the annual meeting go into effect April 1, 1921, and become binding upon each and every member of the Society." They provide that any member leaving the United States must notify the head secretary within sixteen days and if he fails to do so all his rights will be forfeited; and that any member leaving the United States is not eligible for sick benefits and for only half of the death benefits but must pay monthly dues. Aside from these provisions there is no express mention of members who have left the country, but the by-laws throughout use the inclusive expressions "any member," "every member," or "all members." Article VIII provides, in the first section, that any member or officer who fails to comply with the by-laws "shall be suspended from the Society" and that he also "will be suspended" for stealing from the Society or for talking or writing against it either at or outside its meetings. Section 3 of this Article provides that every member shall pay dues every month; if in arrears for two months a member is not eligible for sick benefits, and if in arrears for three months he shall not be entitled to the death benefit; and it then states that every member six months in arrears "shall be suspended" from the Society. Section 4 of this Article provides that any officer or member who violates the by-laws is subject to the right of the meeting to pass upon him and to suspend him and a vote of three-fourths of the members is necessary. The by-laws as a whole appear to be a complete set of rules for governing the Society and they are printed in pamphlet form.

The trial court has found that in January, 1920, the by-laws were amended to provide that "any member that returns to the old country must pay monthly dues

every month, and that if they fail to do so they will be suspended from the Society." This provision appears in the minutes of one of the meetings of the Society in 1920 as a mere vote, without reference to any amendment or change in the by-laws. In view of the scope of the by-laws of 1921, their manner of issuance and their terms no other conclusion is reasonably possible than that this vote was abrogated by their adoption. As, by the terms of these by-laws, a member does not undergo suspension until there has been a failure to pay dues for six months, it necessarily follows that the relator was not subject to suspension when the Society acted in May, 1927.

But if the vote of January, 1920, were in effect, supplementary to the by-laws of 1921, still we could not hold that the relator had been properly suspended. That vote provides that upon the nonpayment of dues a member who has returned to the old country "will be suspended." This is not an express provision that the nonpayment of dues will *ipso facto* work a suspension of membership, as, for example, was the situation before us in *Coughlin* v. *Knights of Columbus,* 79 Conn. 218, 64 Atl. 223; and any uncertainty in its meaning must be resolved in favor of the members of the Society. *Estes* v. *Local Union No. 43,* 90 Conn. 426, 431, 97 Atl. 326. It is significant that the words quoted are the same as those used in the first two sections of Article VIII of the by-laws of 1921, except that there "shall" is used in two instances for "will." The first section of that Article provides that any member "shall be suspended" for failure to comply with the by-laws or for stealing from the Society or talking or writing against it. Certainly these could not be the grounds of an *ipso facto* suspension. Failure to obey the by-laws might consist of a very minor offense, such, for example, as a breach of that one which requires orderly

attendance and forbids conduct unbecoming a member of the organization. Suspension for theft from the Society or talking or writing against it would almost of necessity require an inquiry as to the facts. The only reasonable interpretation of Article VIII is that the fourth section is intended to provide the procedure for all suspensions, that is, action at a meeting of the Society, and a vote of three fourths of its members. If the vote of January, 1920, be regarded as still in force, it would come within this general provision and require like action. It is true that the Society did act in the matter but, as appears from the minutes of the meeting, that action was based upon a supposed existing suspension and was upon the question of the relator's reinstatement to membership, a very different situation than would have been presented had the question been whether or not she should be suspended. Moreover, it does not appear that there was the requisite three-fourths vote of the members. In either aspect of the case, the relator has not been lawfully suspended from the Society.

There is error and the case is remanded to the Superior Court with direction to enter judgment that, upon the payment of such dues as are due or past due, the relator shall be restored to full membership in the defendant Society.

In this opinion the other judges concurred.